

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0810-19

### THE STATE OF TEXAS

**v.**

### RICARDO MATA, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### HIDALGO COUNTY

**WALKER, J., filed a concurring opinion, in which MCCLURE, J., joined.**

## <u>CONCURRING OPINION</u>

Depending on the circumstances, the warnings required by *Miranda v. Arizona* may be set aside if the warnings themselves could create a threat to public safety. Giving warnings when a kidnapping is involved will not necessarily create such a threat. But in Appellee's case, if he was properly warned and thereafter decided to remain silent, the police would have been in an untenable situation where they would not know where the kidnapping victim was located and her safety could be put at risk. For that reason, and not because it was a kidnapping of a child generally, the *Quarles* public safety exception to the rule of *Miranda* applies, and Appellee's un-*Mirandized* answers to

"aggressive interrogation" were admissible into evidence. I agree with the Court's decision to reverse the judgment of the court of appeals, but I respectfully do not agree with the Court's reasoning and cannot join its opinion.

### I — The *Quarles* Public Safety Exception Is Not Categorical

The court of appeals decided the *Quarles* public safety exception did not apply because the situation did not involve a missing gun. The Court today decides the exception does apply because public safety—insofar as the kidnapping victim was a member of the public—was involved. From my own reading of *Quarles*, the public safety exception is not categorical and does not turn on whether there is a missing gun, whether there is a kidnapping, or whether public safety can be generally pointed to. Instead, the exception applies when the *Miranda* warnings themselves can cause more harm than good: when the warnings themselves implicate public safety.

A look at the facts involved in *Quarles* is necessary to understanding how the public safety exception works, and, knowing how it works, it is clear to me that the situation in Appellee's case fails to meet that standard. In *Quarles*:

> On September 11, 1980, at approximately 12:30 a.m., Officer Frank Kraft and Officer Sal Scarring were on road patrol in Queens, N.Y., when a young woman approached their car. She told them that she had just been raped by a black male, approximately six feet tall, who was wearing a black jacket with the name "Big Ben" printed in yellow letters on the back. She told the officers that the man had just entered an A & P supermarket located nearby and that the man was carrying a gun.

> The officers drove the woman to the supermarket, and Officer Kraft entered the store while Officer Scarring radioed for assistance. Officer Kraft quickly spotted [Quarles], who matched the description given by the woman, approaching a checkout counter. Apparently upon seeing the officer, [Quarles] turned and ran toward the rear of the store, and Officer Kraft pursued him with a drawn gun. When [Quarles] turned the corner at the end of an aisle, Officer Kraft lost sight of him for several seconds, and upon regaining sight of [Quarles], ordered him to stop and put his hands over his head.

Although more than three other officers had arrived on the scene by that time, Officer Kraft was the first to reach [Quarles]. He frisked him and discovered that he was wearing a shoulder holster which was then empty. After handcuffing him, Officer Kraft asked him where the gun was. [Quarles] nodded in the direction of some empty cartons and responded, "the gun is over there." Officer Kraft thereafter retrieved a loaded .38–caliber revolver from one of the cartons, formally placed [Quarles] under arrest, and read him his Miranda rights from a printed card.

*New York v. Quarles*, 467 U.S. 649, 651–52 (1984).

The police in *Quarles* were told that the suspect was armed, but when they apprehended him he had no gun yet he had an empty shoulder holster. Any reasonable police officer could deduce that the suspect must have gotten rid of the gun somewhere in the supermarket. Though the suspect could not do anything himself with the now-missing gun, someone else in the supermarket could. If anyone else found the gun before the police did, that person could present a clear and present danger to the police, the other people inside the supermarket, and the people outside the supermarket should the person leave with the gun. Plainly, time was of the essence.

In holding that there should be a public safety exception to *Miranda*, the Supreme Court explained that:

if the police are required to recite the familiar *Miranda* warnings before asking the whereabouts of the gun, suspects in Quarles' position might well be deterred from responding. Procedural safeguards which deter a suspect from responding were deemed acceptable in *Miranda* in order to protect the Fifth Amendment privilege; when the primary social cost of those added protections is the possibility of fewer convictions, the *Miranda* majority was willing to bear that cost. Here, had *Miranda* warnings deterred Quarles from responding to Officer Kraft's question about the whereabouts of the gun, the cost would have been something more than merely the failure to obtain evidence useful in convicting Quarles. Officer Kraft needed an answer to his question not simply to make his case against Quarles but to insure that further danger to the public did not result from the concealment of the gun in a public area.

*Quarles*, 467 U.S. at 657. The plain import is that the *Quarles* public safety exception is intended

to prevent the *Miranda* warnings themselves from endangering the public. This could happen, as the Supreme Court explained, where, after being informed of his rights, the suspect chooses to insist on his right to remain silent and not answer any questions, but answers are necessary to prevent an immediate danger to the public. *Id.* In *Quarles*, this was simple enough—there was a loaded weapon somewhere in the supermarket, and "[s]o long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it." *Id.*

Although *Quarles* involved a gun that, if not found, could be used to cause harm to the public and Appellee's case involves a kidnapped person that herself did not pose a harm to the public, if the police could not find her in time the potential harm could have fallen on her. If Appellee had been given *Miranda* warnings and he thereafter chose to remain silent in the face of the roadside interrogation, his silence could have created an imminent danger to the safety of the kidnapping victim, herself a member of the public, because her location was unknown and therefore her rescue was not at all assured.

To be sure, she was actually located at an address that the police had identified during their investigation, though they did not know it at the time. The police knew two locations where Appellee's phone, from which he had been making his ransom calls as "El Guero," had pinged from.[1] One location was Appellee's residence in Palmview; the other location, also in Palmview, was where the victim was eventually found.[2] As a result of their investigation, the police had probable

---

[1]  Rep. R. vol. 2, State's Ex. 1.

[2]  *Id.*

cause to support search warrants to enter both locations. And the situation was arguably exigent such that they did not even need warrants to enter both locations to search for the victim. In hindsight, if Appellee was given *Miranda* warnings and he exercised his right to remain silent, the police nevertheless could have rescued the kidnapping victim and Appellee's silence would not have created an imminent danger.

But at the time of the roadside interrogation, it was not known that the victim was at either of the two identified locations. She could have been at a third, unknown location. This placed her in a different and more precarious situation than the gun in *Quarles*, because at least in *Quarles* the gun was somewhere in the grocery store, and it would have only been a matter of time to find it. If, on the other hand, at the time of the roadside interrogation, surveillance had established and confirmed the victim's location and the police were confident that the victim was not in any immediate danger, Appellee's silence following the *Miranda* warnings would not have caused a threat to the safety of the victim or the public, and the *Quarles* exception would not apply.

But her location and safety were not established and confirmed. Under the reasoning of *Quarles*, which asks whether the warnings themselves could cause a threat to public safety, it was reasonable for the police to conduct the roadside interrogation of Appellee without giving him *Miranda* warnings. Appellee's statement given during the roadside interrogation was therefore admissible, and the court of appeals's judgment, affirming the trial court's exclusion of the statement, should be reversed.

## II — Conclusion

In sum, the *Quarles* public safety exception to giving *Miranda* warnings does not turn upon the presence of a gun, whether someone was kidnapped, or whether public safety can be generally

pointed to. The exception instead turns upon whether the warnings themselves could create a threat to public safety. Thus, I agree with the Court that the court of appeals erred in determining that the exception was not met based on the lack of a gun. However, I disagree with the Court's categorical approach that a kidnapping of a child inherently implicates public safety and therefore qualifies for the exception. As in *Quarles*, it depends on the circumstances. In this case, the police who stopped Appellee on the roadside were faced with a situation where, if they had given Appellee the *Miranda* warnings and he thereafter exercised his right to remain silent, they might never learn of the location of the kidnapping victim in order to rescue her. The warnings themselves could have caused an imminent threat to the victim's safety.

I concur in the Court's judgment only.

Filed: June 23, 2021
Publish